Good morning, Your Honor. May it please the Court, I'm Joseph Walsh representing Jessica Medina, and I'd like to reserve four minutes for rebuttal. Are you going to be splitting argument? Yes, Your Honor. I'm going to split the argument between myself and co-counsel Dana Cephas, and I believe Just keep track of your time. We've got 20 minutes altogether. Yes, I will, Your Honor. And you can split it and reserve whatever you want. Thank you, Your Honor. Why don't we reset the clock to 20, just so you've got the full. Thank you, Your Honor. The argument that we're going to be focusing on is the argument concerning the necessity requirement for the wiretap and the motion to suppress the wiretap. The wiretap that was denied by the district court. And I think the most important principle that the government has really failed to address in their briefs is that this is a spin-off wiretap. And that the analysis of the spin-off wiretap is different from the analysis of wiretap one in the series. You're not challenging the first four, right? That's correct. We're not, Your Honor. And we take whatever was discovered in the first four, up to then, in justifying this one, right? To a certain degree, yes. To a certain degree, no. The important principle of a spin-off wiretap is a principle that was talked about in the Gonzales Inc. case. And that is that each wiretap must separately establish necessity for that wiretap. And the government is not free to transfer a showing of necessity from one wiretap application to another wiretap application, even in the context of the same investigation. And the necessity requires that there be a showing that other methods of investigating have been tried and failed, or if tried, do not succeed, or are too dangerous. And essentially, the best wording of the necessity requirement is in the Ippolito and Gonzales cases. And they focus on two factors that I think are really important. And that's the amount of resources that have to be applied and the amount of time period that has to be utilized by the officers in conducting a necessity investigation. And that quote is that the necessity showing requires a showing and employing a normal amount of resources have failed to make the case within a reasonable period of time. And if we look in this case, we see in the application for the wiretap target telephone number nine. This is the first time, this is, I believe, the sixth wiretap in the case. I think there were five previous ones. This is the sixth wiretap application. Some of the telephones, they're asking for an extension of already existing wiretaps. But this is a wiretap on telephone number nine for the first time. And so it's targeting Mr. Carlos Rivera, a person that they just learned his identity during the course of surveilling the target on the earlier wiretap of Mr. David Navarro. He was on target telephone number five. While they were listening to that telephone, they heard Mr. Navarro talk to Mr. Rivera, but they didn't know who he was. He was an unknown voice. And then they overheard on July 3rd that Mr. Navarro was going to meet this unknown voice. And the surveillance that was conducted on that day followed Mr. Navarro when he met Mr. Rivera. And then at the end of the day, they consulted their parole leads information, which had photographs of people on parole. And they were able to finally identify who was the person on target telephone number nine, and that was Mr. Carlos Rivera. And so then they decided eventually to get a telephone tap on Mr. Carlos Rivera's telephone. And this is the new suspect that they only identified on July 3rd of 2009. And the only thing they did after that date, and this is basically the first day that they conducted surveillance on him, was the day they found out who he was. And the surveillance was really based surveillance on David Navarro. And it's through happenstance they came across Mr. Rivera. So the only thing they did after July 3rd when they identified who he was, was on July 7th they got his telephone records for a three week period. And they looked through his telephone records and they noticed that he had made calls to two other Black Angels suspects who had been overheard on the telephone collecting extortion money at the direction of David Navarro. So all they knew was that from his telephone records that Mr. Carlos Rivera had called those other two suspects on numerous occasions. And then that essentially was the end of the necessity investigation. So if we analyze the language in the Ippolito case and focus on those two very important concepts of conducting a traditional investigation. One, was there a normal amount of resources used? Well, the only amount of resources used was to examine three weeks of his telephone records of Mr. Rivera. And then- But wouldn't the question be not the expenditure of resources in the past, but given the circumstance, the expenditure of resources that would be reasonably anticipated? Yes, I agree. But the Ippolito case and the Gonzalez case says that the officers must make an attempt to conduct a traditional investigation. They can't simply do nothing, which is essentially what the officers did in this case. And in other words- I understand your argument that what the officers needed to do to show the necessity as to Mr. Rivera's phone was to start all over again, to start trying to use traditional means of surveillance and seeing if it's adequate. Yes, your honor. That's exactly what the Gonzalez Inc case says. That's what the US versus Carneiro says. That's what US versus Blackman says. This is a new suspect. There need to be allegations specific to the surveillance of the particular target phone number user. From which one? They need to include information that's specific to the new target phone user. Exactly. And they have to, the cases basically say they have to do a normal investigative necessity investigation to the new target, which is this new target is Carlos Rivera. Why would he be any easier to get the substance of his communications than any of the prior ones? Well, if you say that, then you eliminate the entire necessity requirement, because you could say that in any criminal investigation, because we already know from reading all these wiretap applications that they're never going to make their case without the wiretap. But the law requires that they at least try to make a case without the wiretap to see whether they'll be successful or not. I agree. In most cases, they're not. And then they get the wiretap. But Title III requires this first step of showing necessity. But I'm not sure I read the case laws quite so strict as that. If we're starting out, I understand why you have to have made the attempt, because without making the attempt, you don't know that it is futile. You don't know that it's too expensive. You don't know that it's too dangerous. If you're just sort of saying, I think it would be too hard, and therefore I get the wiretap, I get that. But here we are fairly far into an investigation. They know the gang they're dealing with. They understand lots of the ways that it's operating. And it seems to me that it has to be the law that in certain circumstances they can act on what they know based on their prior experience as to whether or not further expenditure of conventional resources would be too dangerous, too expensive, or whatever. Isn't that right? I disagree, Your Honor, because you're going to read the law that way. Because that would completely eliminate the requirement of a necessity investigation or a traditional investigation of Carlos. Not necessarily. I mean, if they pick up a lead as to somebody who's not in the same position as the people initially investigated, let's say somebody in Chicago or clearly, then maybe that's different. But if they have somebody who looks based on the evidence they have from this investigation, and then his pattern of callings, and so on, and his location, his apparent location, that he is just like the people they were investigating for which they needed a wiretap, why isn't that limited to those class of cases? Because we've already had that case. That's the Carnero case, United States versus Carnero, where they had the necessity investigation. They wiretapped McNeil, and then they heard Boyd and the other suspect. And they didn't do any necessity investigation on them, because there were just other conspirators in the drug case that they were investigating. And so they got a wiretap, and the Ninth Circuit held that they conducted no traditional investigation of Boyd. And I can't remember the other person, but they were the spinoff wiretap from the McNeil wiretap. And it was all drug dealers in a conspiracy. And the Ninth Circuit said, no, you have to conduct this necessity investigation. And you can't transfer your necessity finding or investigation from one wiretap to another. You really have to conduct another one. And what you're proposing is that what we've learned from wiretaps one through five, that it's difficult to investigate these drug conspiracies. Well, we know that from, you can say that in every drug investigation. And that's the Blackmun case, the Ninth Circuit Blackmun case, says you can't proceed to establish necessity based on generalities about what you've known in the past. And we review for abuse of discretion, right? I'm sorry? We review for abuse of, the warrants was issued. All the affidavit was presented to the magistrate judge, right? No, it's a two-step review. The first step is de novo review, whether or not a full and complete statement establishing necessity is in the wiretap application. And once the court uses de novo review, then there's a second review step of abuse of discretion, whether after the court examining the application issued the wiretap. It's somewhat confusing, but there's a two-step process. And we're focusing mainly on the de novo review. We think that the application itself on its face does not show that they used a reasonable amount of effort to conduct a traditional mistake. And they didn't use a reasonable amount of time, because they were basically typing up this affidavit on July 7th. After identifying him on July 3rd, and then submitted to Washington on July 8th. And we know that because we had an email turned over from the government when we were investigating something else concerning the issuance of the application on the other argument about authorization. And we find out that this affidavit was in Washington, D.C. on July 8th, after first identifying Carlos Rivera on July 3rd. So that's five days later. That's not a reasonable period of time to conduct a necessity investigation. And how much resources did they add to it? Nothing. They got his telephone records and reviewed his. And then if you look at all of the other justification in the wiretap application under necessity, they're all generalities about what happened to other people. And there's really no mention of Carlos Rivera, except when they provided a false statement about. You've got about eight minutes left. Okay. And I'll just finish on the one point. The counsel seems anxious to take this. I'm sorry. If I can just complete my one statement concerning the false statement, because I think that's really important. It's conceded that there was a false statement. It's conceded it's in the necessity area. One of the ways they show necessity is they try to conduct trash searches and they say, well, we didn't find anything. And besides, trash searches generally don't make the case anyway. Here they lied in the affidavit and said we couldn't conduct a trash search on Mr. Rivera because we didn't know where he was. And it turns out his name was in an earlier, or his address was in an earlier part of the investigation. And that's very critical because their justification at the hearing was that we were updating the earlier wiretap application. And in United States versus Blackmun, the court wrote a strong opinion that says that the officers have to be very careful about taking old wiretap affidavits and using a carbon copy in order to update them because you make mistakes. And that's exactly what happened here. And that's why we think that was a reckless conduct upon the officer in doing that. He had to be on notice of the Blackmun case and then to go ahead and do that. And then it results in a false statement in the application, precisely on the issue of necessity. They've done almost nothing on necessity. And here's one case where they're justifying doing nothing by stating they don't know where he lives and when, in fact, they did. So, and I think that's an important factor the court should consider in our motion. And I'll defer to Co-Counsel. Thank you. Thank you, your honors. And if it may please the court, Dana Cepas on behalf of Raul Prieto. I would like to briefly discuss DOJ authorization and minor role. I also wanted to make one more comment on necessity. The court was discussing whether they have to engage in this new investigation in light of the facts that they had already uncovered in the prior ones. Well, I think what also has to be considered, when you have a new target, maybe the other targets, you didn't know where they lived, so you couldn't conduct surveillance. So I think if the new affidavit says, we don't know where Rivera is, so we can't surveil him. That will suffice to address that. We can't do a trash search because we don't know where he lives. But I think the affidavit at least has to address Rivera specifically with respect to all of those factors. And if you look at the affidavit, it talks mostly about Navarro. And this new affidavit was addressed at Navarro for number five, Reyes for number seven. Jose, last name unknown for number eight, and Rivera for number nine. But it doesn't say why we can't surveil. It doesn't say why we can't do a pen register for Rivera. It just has some generalities about Navarro. And if they're going to forego a traditional investigation, they have to say with specifics why, with respect to Rivera, they couldn't do this. Why they couldn't surveil him. Why they couldn't do a pen register. Why they couldn't do a trash search. The affidavit doesn't address any of those things with respect to Rivera. Now, with respect to DOJ authorization, before they can apply for a wiretap affidavit, they have to have the informed consent from Department of Justice. And to have informed consent, DOJ has to know who the target is. And there's no evidence here that DOJ was ever told that Mr. Rivera was going to be the target of a wiretap. Without that informed consent, and without the indication of that authorization in the letter, there is no way for the district court to know whether DOJ had in fact approved Mr. Rivera's phone being tapped. Now, if the DOJ wants to wiretap, for example, my wife and I have different last names. If the DOJ, excuse me, if the government wanted to wiretap my wife, but put my name down in the application, well, that wouldn't be informed consent, because I'm not the target. And the government knows who the target is. So therefore, they have to let DOJ know, here's who we know is the primary user. Here's who we know we believe is doing some criminal conduct. We would like to wiretap this person. The government's reliance on Donovan just isn't relevant here. Because in Donovan, the court was addressing people who were third parties who were intercepted. These were not people who were the primary targets. And Donovan makes clear, as long as the primary user was identified, well, then that's adequate. Why isn't the subscriber sufficient? I mean, that's how they're going to be able to actually secure the wiretap. Well, the reason the subscriber isn't sufficient, because that would completely do away with the whole notion of informed consent. Any time, in a lot of these cases, especially, I think, in drug and gang cases, you have dealers who get phones under other people's names. Because they don't want the phone under their own name. And so if government agents could simply say, well, we know who the target is, but we don't want DOJ to know. Because DOJ may say, well, isn't this person on parole? Why don't you do some parole searches? Why don't you do some traditional investigation? Or this person, isn't this the same person who was on prison calls that you could listen to without a wiretap? I think it's important for DOJ to have informed consent. So if the government knows, and the statute says, the identity, if known, should be included in an application. And so, allowing the government to withhold the true identity of the user and only give the identity of the person who subscribed... Should doesn't sound like much of a mandatory standard. Well, I believe it says must if... Say should or must? I forget. You said should. I... They're different words. Correct, they are. And I believe it is must... What section is it? What word? 2518... 2-5-18... I'm sorry, I don't have it in front of me, but I believe it is that the identity must... If known, must be given... The identity if known? Yeah, identity of the user, if known, must be provided to the court. And they had that... You said target. As opposed to user. You're confusing terms here. What you're arguing is that even if somebody else is on the phone, the phone is somebody else's name, somebody else's line, if they know the target, what you said is the target should be mentioned. That's what you said. I was probing... I believe the statute requires... Do you have a statute? No, I apologize, I don't have the statute in front of me. And it is 2518. It's a long section, I've got it here. 2518-1, subsection 1c, I believe. 1c, full and complete statement as to whether or not other investigative procedures have been tried. Let's see, that has to do with application. You're not talking about getting the concurrence of the Department of Justice. I am talking... Well, I'm sorry, I missed that point, Your Honor. I thought you were talking about getting Justice Department authorization. Approval from main justice, right? Okay, 2518, subsection 1 shall include the following information. The identity of the person, if known, committing the offense and whose communications are to be intercepted. That's BIV, subsection BIV. The identity of the person, if known, committing the offense and whose communications are... BI? BI doesn't have a B. 2518-1 and then... B. B Roman IV. Small B and then small Roman IV. IV, right? Yes. But does this have to do with authorization from main justice or... The main justice is in 2516, which then says it must be in conformity with 2518. And so it would make no sense for that requirement not to apply to justice, to suggest that it shall, the identity has to be given to the court, but it doesn't have to be given to justice. And so I would submit that... Where does it say the target? That they must identify the target? Well, you know, you could have a phone that could be the person who's using the phone could be under investigation. What I heard you say is if they also know that somebody else is a target who will be using that line, they have to include that. That's what I thought you said. And that's the very line I picked up on. I said that you said that should be included. And I am wondering where you get that. Where is the requirement that they add somebody else who might be using the line who is also a target, that they have to sort of add that? I'm not saying the additional person. The primary user here was Rivera. And that was the primary target. That was both the primary user and the primary target. In fact, the only target of that phone was Rivera. And so you have the only target of Rivera not being identified to DOJ. And... But was he identified to the judge or did we... He was subsequently identified to the judge. Okay, so I'm reading the conformity language in 2516. The Attorney General or a whole bunch of people like the Attorney General may authorize an application to a federal judge of competent jurisdiction for, and such judge may grant in conformity with Section 2518. I don't read this as requiring conformity in giving information to DOJ. I regard the 2518 reference is that if you're going under 2518 in front of a judge, you've got to comply with 2518, but not when you're getting permission for the Attorney General to go forward. But if you look at this Court's ruling in United States v. Staffeld, that issue is addressed. And the Court struck it in that case, the letter, I'm challenging the letter because it didn't have Rivera's name. In the letter from DOJ and Staffeld, the letter had the wrong person's name in it. It had the name of someone else. And the Court said the facial insufficiency in this case makes it impossible for a judge to conclude from the face of the application that it had been authorized by the Justice Department. And the same thing here. Because Rivera's name wasn't on the letter, it was impossible for the district court judge to conclude that DOJ had authorized it. Okay, I got it. I have a question for you on the minor role adjustment. It actually applies for both Prieta and Medina. Yes. So how would that adjustment work with the fact that they were subject to a mandatory minimum in this case? I mean, even if they got the adjustment, wouldn't they still get sentenced to the mandatory minimum? Yeah, unfortunately, there is no way around the mandatory minimum in this case. But Mr.- So why does it make a difference whether they got the minor role adjustment or not? Well, it makes a difference in three years in my client's sentence. Had he got minor role, his offense level would have, the low end of the offense level, which is where he was sentenced, would have gone from 110 months to 77 months, which is quite significant. And minor role here, when you look at my client's role, is a wannabe who, Navarro, who was head of the gang, testified Rivera was kept out of the gang. He was protected by Rivera. Rivera didn't want Prieto involved. And Prieto kept saying, let me help, let me help, try and let me prove- So where did the, I couldn't find the transcript where the district court expressed the role that Prieto or Medina were not entitled to the minor role adjustment. The district court just said, well, they're subject to the mandatory minimum. No, no, there was a discussion. And in fact, what the district court judge said was, he made errors because he said, for example, Rivera and Prieto discussed price and quantity, and that was not, in fact, correct. There was never a discussion on that. And then he also said, well, he's not eligible for minor role because he allowed Rivera to use his house for other criminal conduct. And that wasn't accurate because it wasn't his house. It was his mother's house, and Rivera was close friends to all three brothers, not just my client. And my client had no role in these other criminal acts. The appropriate way to look at minor role is to look at all of the drugs, all of the drug transactions, not just this small one that my client was convicted of. And so when you look at the Black Angels, and if you look at all of Rivera's drug deals that were discussed in the case, he discussed quantities and amounts. He talked about deliveries. None of that was involved, was my client involved in. And when you look at relevant conduct under the guidelines, and you look at minor role, my client should have been given minor role. And I would say he should have been given minimal role because he had never done anything for this gang. He had never sold any drugs. He had never delivered any drugs. He was just a wannabe who was trying to convince his long time friend to let him have a role in his. Bigger deals, and- Okay, thank you. Thank you. We'll hear from the government. Good morning again. Excuse me, Michael Dore on behalf of the United States. Judge Wardlaw, you had asked about the minor role adjustment discussion in the record. In Mr. Prieto's excerpts of record, page 80, there's a discussion with respect to the minor role adjustment. As to Defendant Medina, in Ms. Medina's excerpts of record, I believe it's at page 77. Okay, so would it have made a difference in their sentences? Yes, I believe it would, because Ms. Medina was sentenced to 151 months imprisonment. She was subject to a 10 year mandatory minimum. Defendant Prieto was sentenced to 110 months imprisonment. He was subject to a five year mandatory minimum. So, I thought the role on the adjustment was whether they were substantially culpable in terms of the entire conspiracy. Isn't that right? Is that what the district court did here? Yes, I believe that the district court concluded that they were not substantially less culpable than the average participant in the conspiracy. And it considered the various facts involved in the case that the government presented to it. And if you'd like, I can discuss those with respect to each of the defendants. No, you don't take up our time with that because we have that in mind. But it just seems to me, especially Prieto, who without even hearing counsel's argument, my note next to Prieto says a wannabe. Just outlining who the characters are in the whole conspiracy. And I'm just wondering, how can he have substantially the same culpability as Rivera, for example? Well, obviously that's Mr. Cephas' characterization that we would not share. And with respect to, I don't believe that the basis for comparison would be Mr. Rivera. I believe that Mr. Rivera was far more than an average participant in the conspiracy. And so the metric here, as far as what we're considering, is whether this Mr. Prieto, for example, is substantially less culpable than an average participant. Mr. Rivera, as a drug dealer, as someone who is obtaining a firearm on behalf of the gang, we believe was more significant than an average participant. Various facts suggested that Mr. Prieto, whether or not he was a wannabe as to the RICO conspiracy, as to being a member of the gang, I think- He was acquitted of RICO, right? Correct, and that's why I think it's, well, no, the jury was unable to reach a verdict. Okay, so they hung, but you didn't retry him. Correct. But I think it's important to keep in mind that vis-a-vis the drug conspiracy, there is no indication that he is a wannabe. Mr. Prieto referred in that call with Mr. Rivera as to other sources for drugs. They're using first names to refer to, just ask Eric, for example, about the quality of my stuff. Mr. Prieto talks about needing to do a robbery. He talks about needing to find someone that he can sell cocaine to. So there is no indication that from that call alone, from there were two calls from on the August 5th, August 6th, 2009 time period, that Mr. Prieto was not a bona fide member of this conspiracy looking to push a half ounce of narcotics. Do you know- It depends on what you describe, it depends on how you define the scope of the conspiracy for which he was convicted, right? Yes, I would believe, yes, as far as, you know, what are you comparing them to when you're saying they're less culpable than the average participant in this conspiracy? But obviously, it's a matter also of the standard of review and whether or not the district judge committed, I believe it's clear error, but I don't recall- Minor role clear error or abuse? I'm sorry, I don't recall. Okay. But under either view, we would submit that the facts certainly supported the district court's, at minimum, use of its discretion in making that determination. What about this Stafford argument, Stafford? The DOJ authorization letter, it's important to keep in mind that obviously the DOJ is authorizing something. And they are authorizing the wiretap application and the affidavit, which itself identifies Carlos Rivera all over it. And so, there is no indication at all that DOJ wasn't giving its authorization of the application submitted to the district court. And the- How does the authorization process work? There's a letter. There's a letter that includes the application itself. So the application is attached to the letter. Yes. And I believe that Mr. Prieto's counsel included in the excerpt of the record emails between the reviewing counsel and the government, whereby there were comments as far as harmonizing the application and the affidavit, because there was an inconsistency or there was a name missing. So my understanding, at least, because I personally have not taken part in this process, this is based on my review of the record having come on the case, is that the letter is sent to them along with the application for their review, and that they send back these nits in an e-mail saying, what is your basis for charging this- So your point is that they obviously looked at the substance. They didn't just rely on the cover letter. Correct. And I believe that the e-mail submitted as part of the record and referenced by Mr. Prieto's counsel substantiates that, because there is a comment by the reviewer. I apologize. It's in the 1100s of the excerpts of record, Mr. Prieto's excerpts of record. Is making a comment about the content of the application and the content of the affidavit. And so they've gotten that before them, and they've got the identification, Mr. Rivera. Separate and apart from that, the DOJ authorization letter is identifying the telephone. It is providing the subscriber information. And you can look at 2516.1, there is no authority that I've seen that says that the DOJ authorization letter must contain X, Y, and Z. And so you might have cases like Staffeld, where it is clear that the DOJ is authorizing something completely different. They were looking at a application in a different investigation. But here, I think it's a much more narrowly circumscribed area that we're talking about here. And the DOJ had that information in front of it in the form of the draft application. If you don't mind my coming back to minor rule from Prieto, because that one does bother me somewhat. It may be that the district judge is insulated sufficiently by the standard of review, which I think is clear error. Although, obvious discretion, clear error, I'm not sure how big the difference is. But Prieto didn't do much. Correct, Your Honor, and- And didn't conspire to do much. Well, I said correct- They would like to, he would like to have been allowed to conspire to do much. He wanted to do, he wanted to be part of the deal. So how do you respond to that? I would respectfully disagree with that, in that he wanted to sell a half ounce of methamphetamine. The reason he didn't sell a half ounce of methamphetamine is because police intercepted that methamphetamine. And so to say- Given the size of this operation, a half an ounce is kind of trivial. Well, it's sufficient to get someone at least five years in prison, and- Yes, but now we're talking about minor rule, not whether it's sufficient to allow the conviction. Certainly. But I would argue with respect to that, if you're going to talk about if someone, by virtue of making their organization sufficiently diffuse, is insulating various people from a more significant liability in sentencing, I think that creates the wrong incentive. There was Robert Tolson is another one of the people that Defendant Rivera sold his drugs to. He used virtually the same language in describing it as bomb and guaranteed, as he did in the phone call with Mr. Rivera. Mr. Tolson was intercepted in a car with someone who had that 4.4 grams in his sock. So Mr. Rivera clearly had multiple people selling drugs for him. And just by virtue of the fact that he didn't have one guy selling it all, I would respectfully argue that that doesn't in and of itself make that Mr. Prieto significantly less culpable than the average participant in the drug conspiracy. I would add to that that just because that one call provides, in our view, very good evidence of Mr. Prieto's involvement in the conspiracy, desire to sell a half ounce of methamphetamine, there are other calls and there is other evidence indicating his alignment with, association with, at least Mr. Rivera, if not the Black Angels gang in general. It sounds to me like what you're saying is that there is no minor role adjustment in the case of a conspiracy. I have trouble imagining what would be a minor role adjustment, what would justify a minor role adjustment. I mean, conspiracies are sort of big enterprises and the gopher and runner is important, just as the guy who sets up the deal. I mean, there are lots of parts to it and you could point to any one of them and say, well, they are to support the entire enterprise. Certainly. One distinction I would draw would be, for instance, I think in the commentary to the Here, that's someone who doesn't really play any direct role in the drugs being sold. There is sort of a link in the chain. Whereas Mr. Prieto is looking to become someone who is moving a distribution quantity of methamphetamine to other purchasers. So I would argue that that puts him higher in the hierarchy than other people who may be involved in the conspiracy, for example, transporting the fake battery that contained a half pound of methamphetamine. So in your view, the guy who drives the truck across the border carrying half a ton of marijuana is less culpable than the guy who's... I'm sorry, let's take marijuana out of the picture because we're in California. The methamphetamine, let's just say half a ton of methamphetamine is less culpable than the guy who on the street gets half an ounce of methamphetamine, of that very same methamphetamine and tries to sell it or attempts to sell it. So that guy, the attempted seller is more culpable than the guy who drives the... I personally would not say that. But I believe I could craft a hypothetical whereby someone was given $200 to put some drugs in their pocket and walk through a metal detector at LAX and then hand it to the guy on the other side, as opposed to someone who's looking to sell... Steve Paris was the DEA agent. I'm sorry, is the difference between $200 or whatever the driver's paid, is it because it's different because it's an airport rather than a border? Is it different because it's a truckload as opposed to a quantity and carrying person? How are those two different? Well, I would argue that there's essentially a sliding scale of culpability. So it could be, for example, the amount of money that someone's paid, which would reflect the amount of drugs that they are involved with. It could be the circumstances by which they are driving something that would reflect, whether it was a ton of methamphetamine or some high amount, the amount of doses that that would equate to, the amount of... You wouldn't take... If you're looking... I mean, this is sort of a textured approach, a circumstances approach, and you would not include in the circumstance the fact that he never actually got so far as to sell or make a sale. That doesn't count as a circumstance? I believe it should be considered with a great deal of caution because it would create an incentive for people to become involved in this conduct because they would know that they are looking at a higher penalty if they're caught, or if it isn't successful. And if it is successful, rather. If it fails, they're looking at something less. So I'm not saying that someone sitting in the lab sort of calculating sentencing exposure, but that person would then have a greater incentive to take a run at it because the penalty here... is something through the airport metal detector. You know, if you sort of say, gee, if you don't get away with it, you'll get a lesser penalty, that'll make it more likely that... Same thing, isn't it? I think that's a comparison of two different things, though, because you've got... Of course. That's... Can you compare one thing? No, no, no. I think that is focusing on different elements of our respective hypotheticals in that... Because there, in my view, for whatever it's worth, it's the criminal activity being under taken with the person in that example trying to bring a very small amount of drugs through the metal detector, compared to someone who is looking to push a half ounce of methamphetamine. In my mind, those are two different levels of severity on the scale. I understand. I understand. But that... I grant you that for the purpose of the question, and the question I was... Whatever the severity is, does the fact that it's inchoate, that you don't actually get to complete the crime, does that not... Is that not a fact that it should count in favor? And you said, oh, well, it shouldn't because it just encourages them. But that's true across the board. It doesn't matter how serious a crime is, it doesn't matter what the crime is. If you give people... If you give them... If it counts towards a minor law adjustment that you didn't get away with it, that would encourage anybody. It doesn't matter, right? So I don't see how the two things are different. I don't think that the person who's trying to bring it through the metal detector at LAX should be entitled to a minor role... Should be entitled to greater consideration if they weren't otherwise going to get the minor role adjustment by virtue of the TSA guy stopping them. So if you assume for purposes of our hypothetical that that person, if he completes the deal, if he delivers the meth to the guy at Terminal 3, if that guy would not have gotten a minor role adjustment, I don't believe that if TSA stops them, he somehow should be entitled to a minor role adjustment because, as the Supreme Court has said, the conspiracy... What if he does it twice and three times? Does that matter? Well, I would argue that that elevates his role as far as his participation in the conspiracy, and certainly that would be subject to argument and perhaps the district court's discretion in determining what role that person was playing vis-a-vis the conspiracy and the actions that he was taking on its behalf. Here, again, Mr. Prieto didn't in any way indicate that this was a one-shot deal, that he was not part of it. In all the evidence you have on conspiracy, there is only one transaction in which Prieto is involved. There is only the one phone call that we have that involves Mr. Prieto looking into it. This is a vast conspiracy. That's true. There were only two to my recollection, there were only two phone calls of Mr. Prieto that were intercepted. And so at the same time, Mr. Rivera and Mr. Prieto repeatedly indicated at trial that they were like brothers, that they had a regular situation. I know they said that, but it's not the whole thing about the mother took Rivera in, and he was friends with everybody, and that's why Rivera didn't want Prieto to be involved. Did you do that? I mean, you just don't believe that, but the evidence doesn't dispute that. Well, the evidence indicated that Mr. Rivera was willing to have Mr. Prieto involved in the delivery of a handgun at Mr. Prieto's house, that Mr. Prieto was present for at least two narcotics transactions that Mr. Rivera conducted at his house, one of which Mr. Navarro testified was methamphetamine. His house or his mother's house? They both lived there. Who owned it? I think Mrs. Prieto owns it. Okay. So it was her house. Understood. I would argue that by virtue of the Mr. Prieto, for example, running away from police when they were coming to intercept the handgun transaction at Mrs. Prieto's house, into the house, by the way, which had a small child inside of it, where he drew armed forces. That's irrelevant to the minor role discussion. Well, Your Honor, I would only argue that that is relevant to Mr. Prieto's repeated involvement with Mr. Rivera in committing crimes and in evading law enforcement. He only proved that one attempted transaction. There was evidence only of, well, it depends whether he was new. But did you prove at trial? What was he convicted based on? Well, he was convicted of being involved in that conspiracy, and I would believe that the telephone call about that half ounce was the driving factor in that conviction. Right. So as we look at minor role, do we look to behavior for which he is not convicted? He's not subject to the charge, or do we look to the behavior of which he has been convicted in relation to other parts of the conspiracy for which convictions are had? I'm trying to figure out what we look at, because you're looking at all kinds of things that he did that look kind of bad. Do we get to look at that when we're talking minor role? Your Honor, there isn't a sentencing guideline section that I can cite for you, but looking at 3553 as a guide, the nature and characteristics of the defendant, I believe, are relevant, and actions taken by the defendant that were established via evidence at trial, simultaneously, it's hard to conclude exactly what the jury was basing its verdict on. Okay. Okay. Thank you. Thank you, Your Honor. The case is argued and canceled, Your Honor. We are now going to return to the hearing.
judges: Kozinski, Wardlaw, Fletcher